IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00293-D

LACHANTAL W. RICKETTS, )
)
        Plaintiff, )
)
v. ) **ORDER**
)
LOGICS, LLC, et al., )
)
        Defendants. )

On October 13, 2015, Lachantal W. Ricketts ("Ricketts" or "plaintiff") filed a pro se employment discrimination and retaliation action against Logics LLC, Logics Solutions, USA Software & Services, LLC, and USA Software Operating Co LLC (collectively, "defendants"). [D.E. 1-1, 6] (punctuation copied from original).[1] On November 24, 2015, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 19, 20]. See Fed. R. Civ. P. 12(b)(6). On January 25, 2016, Ricketts responded in opposition [D.E. 25]. As explained below, the court grants the motion to dismiss and dismisses the complaint without prejudice.

I.

Ricketts worked as a technical trainer for defendants from April 2014 to June 2014. Compl. [D.E. 6] 3.[2] Her job duties included training companies and municipalities to use utility-related

---

[1] Identical copies of Ricketts's complaint are docketed at [D.E. 1-1] and [D.E. 6]. Ricketts attached two EEOC documents to her original complaint. See [D.E. 1-2, 1-3].

[2] Ricketts names as defendants Logics LLC, Logics Solutions, USA Software & Services, LLC, and USA Software Operating Co LLC. See Compl. 1 (punctuation copied from original).

software. See id. Ricketts "was better qualified as a trainer" than one or more unidentified people, and she "possessed an extensive educational background." Id. 3; see EEOC Questionnaire 2.

Several times during lunch and morning hours at work, Ricketts's coworkers made derogatory comments, including referring to "people of color, involving mostly African-Americans," who worked for a competitor as "crackheads," "thugs," and "criminals." Compl. 3; see EEOC Charge 1. Ricketts self-identifies as "American Indian or Alaskan Native" and "Black or African American." EEOC Questionnaire 1. Ricketts states that her coworkers' comments made her feel isolated and humiliated and distracted her from her work. Compl. 3. Ricketts "vigorously complained" about the derogatory comments as well as problems that she had with the company's proprietary software. Id.

Ricketts alleges several disparities between her treatment and the treatment of her coworkers. See id. 3–4; EEOC Charge 1. According to Ricketts, it took her longer to receive full access to necessary software programs as compared to Susan Stamey, a white female, who also worked as a trainer. Compl. 4; EEOC Charge 1. Moreover, although Ricketts's supervisor "informed [Ricketts] not to focus on [her] timesheet until further advised," a white female manager outside the training

---

Ricketts alleges that these entities employed her between April and June 2014. See id. 3. In her EEOC charge, however, she named only Logics Solutions as a respondent. See EEOC Charge [D.E. 1-3] 1. But see EEOC Questionnaire [D.E. 1-2] 1 (listing several names for Ricketts's employer). In their motion to dismiss, defendants attempt to clarify which entity employed Ricketts and the relationships among defendants. See [D.E. 19] 1. In evaluating the motion to dismiss, however, the court considers only the facts contained in the complaint and incorporated documents. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Thus, at this stage, this court will not resolve who employed Ricketts. Cf. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998); see 42 U.S.C. § 2000e(b). Additionally, this court will not resolve whether Ricketts timely filed a charge against each alleged employer. Cf. 42 U.S.C. § 2000e-5(b); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108–10 (2002); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110–11 (1988); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Williams v. Giant Food Inc., 370 F.3d 423, 428–30 (4th Cir. 2004); Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998).

department began to "harass" Ricketts about her timesheet but did not harass white trainers regarding their timesheets. Compl. 3–4. Furthermore, a coworker once asked Ricketts to pray during work hours, but Ricketts never saw anyone ask other trainers to pray. Id. 4; EEOC Questionnaire 2 (alleging that Ricketts is Christian and the coworker who asked her to pray knew Ricketts's religious preference). Finally, a coworker shared personal information from Ricketts's employee file without her consent, but did not share personal information of white employees. Compl. 5.

During Ricketts's employment, Susan S., a newly-hired trainer, informed Ricketts that Ricketts was expected to train her. Id. 4. This news surprised Ricketts. Id. Ricketts believes that her employer required Ricketts to train Susan S. in retaliation for Ricketts's complaints about the work environment. Id.; see EEOC Charge 1 ("I was given more job responsibilities than [a subsequently-hired trainer].").

At some point, questions arose concerning Ricketts's continued employment. See Compl. 3–4. Ricketts, however, did not receive any evaluations during her employment and "was never reprimanded for any poor or below average job performance." Id. 5. Ricketts states that her "employer relied upon feedback . . . from another trainer," a white female, regarding whether Ricketts's employment should be terminated. Id. 3. On June 17, 2014, Ricketts was discharged. EEOC Charge 1. Ricketts was informed that she had been discharged "due to the financial status of the company," but her employer later posted a job opening for Ricketts's position. EEOC Questionnaire 2; EEOC Charge 1. Moreover, Ricketts's employer did not discharge a white trainer, who was hired after Ricketts, had no previous training experience, and was less educated than Ricketts. See Compl. 3; EEOC Questionnaire 2.

On July 17, 2014, Ricketts filed her charge with the Equal Employment Opportunity Commission ("EEOC"). EEOC Charge 1. The EEOC dismissed the charge and issued a "Right to

3

Sue Letter." See Compl. 2. Thereafter, Ricketts timely filed suit in this court. See [D.E. 1]; see also [D.E. 3–6]. On November 24, 2015, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 19–20]. See Fed. R. Civ. P. 12(b)(6). On January 25, 2016, Ricketts responded in opposition. [D.E. 25].

II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal and factual sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). A court need not accept as true a complaint's legal conclusions or unwarranted inferences, unreasonable conclusions, or arguments. Giarratano, 521 F.3d at 302 (quotation omitted); Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[ ] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co., 637 F.3d at 448; see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records such as court documents without converting the motion to dismiss into a motion for summary judgment. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

4

551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Here, the court considers not only the complaint, but also the EEOC charge [D.E. 1-3] and EEOC intake questionnaire [D.E. 1-2] that Ricketts attached to her original complaint. See Compl. 2.

III.

Ricketts alleges race discrimination and religious discrimination in violation of Title VII. Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Ricketts alleges that her employer violated Title VII by (1) creating a hostile work environment based on her race and religion; (2) terminating her employment based on her race, and; (3) retaliating against her for complaining about illegal discrimination. See Compl. 3–6.

A.

Ricketts alleges a hostile work environment based on her race and religion under Title VII. Ricketts claims that her employer created a hostile work environment by allowing white coworkers to make derogatory comments about "people of color, mostly African-Americans," who worked for a competitor, harassing Ricketts about her timesheets (but not subjecting the timesheets of white trainers to the same scrutiny), allowing a coworker to ask her to pray during work hours, disseminating her "personal information," and delaying her access to needed company software. See Compl. 3–5.

To state a claim that her employer violated Title VII by creating a hostile work environment, Ricketts must plausibly allege that (1) she experienced unwelcome harassment; (2) the harassment was based on her race or her religion; (3) the harassment was sufficiently severe or pervasive to alter

5

the conditions of employment and create an abusive atmosphere; and (4) the harassment is imputable to the employer. See, e.g., EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

To determine whether alleged harassment was sufficiently severe or pervasive to alter Ricketts's terms and conditions of employment and to create an abusive working environment, the court examines the allegations both subjectively and objectively. See, e.g., Harris, 510 U.S. at 21–22. First, a plaintiff must subjectively consider the harassment to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc). Second, a court views the conduct from the perspective of a reasonable person in the plaintiff's position to determine whether it is objectively severe or pervasive. See, e.g., Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The conduct must be extreme to be actionable. Id.; Faragher, 524 U.S. at 787–88; see Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80. The "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. "[D]iscriminatory intimidation,

6

ridicule, and insult" based on race or religion must "permeate[ ]" the work environment in a manner "sufficiently severe or pervasive to alter the conditions" of plaintiff's employment and to "create an abusive working environment." Harris, 510 U.S. at 21 (quotations omitted). Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod–U–Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli v. City of Balt., 648 F.3d 216, 218–22 (4th Cir. 2011).

Although this court does not condone the alleged comments of Ricketts's coworkers referring to a group of "people of color, mostly African-Americans" who worked for a competitor as crackheads, thugs, and criminals, Ricketts's allegations concerning her treatment are not objectively severe or pervasive enough to alter her employment and create an abusive atmosphere. See Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Harris, 510 U.S. at 21; EEOC v. Xerxes Corp., 639 F.3d 658, 676–77 (4th Cir. 2011); Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 336–37 (4th Cir. 2010); Baqir, 434 F.3d at 746–47. Although the comments were rude, the combined effects of these alleged comments, even when coupled with the other alleged conduct occurring at work in April, May, and June 2014, objectively do not constitute a change in the conditions of Ricketts's employment. See, e.g., Breeden, 532 U.S. at 270–71; Xerxes Corp., 639

7

F.3d at 676–77; Bonds, 629 F.3d at 385–86; Baqir, 434 F.3d at 746–47. Thus, the court dismisses Ricketts's Title VII hostile work environment claim.

B.

Next, Ricketts contends that her employer terminated her employment due to her race. Ricketts lacks direct evidence of discriminatory termination; therefore, she relies on the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must prove a prima facie case of illegal discrimination by showing that (1) she is a member of a protected class; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of her discharge; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. See, e.g., Hill v. Lockhead Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 720 n.1 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); see also Guessous v. Fairview Prop. Invs., LLC, No. 15-1055, 2016 WL 3615780, at *8 (4th Cir. July 6, 2016); Miles v. Dell, Inc., 429 F.3d 480, 485–89 (4th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the

8

employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted).

To survive a motion to dismiss, a Title VII plaintiff must plausibly allege her statutory claim (though not a prima facie case). See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585–88 (4th Cir. 2015), cert. denied, 136 S. Ct. 1162 (2016). As for causation, the Fourth Circuit has held that

> [f]or status-based discrimination claims, the employee must "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2523 (2013). Retaliation claims, by contrast, require the employee to show "that retaliation was a but-for cause of a challenged adverse employment action." [Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015)]; see Nassar, 133 S. Ct. at 2533 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

Guessous, 2016 WL 3615780, at *6 (parallel citations omitted). Thus, to state a Title VII claim, a plaintiff must plausibly allege the appropriate causal connection between the plaintiff's protected status or act and the alleged discrimination or retaliation. See id.

"[N]aked allegations" of a causal connection between the plaintiff's race or religion and the alleged discrimination do not state a plausible Title VII claim. See McCleary-Evans, 780 F.3d at 585–86 (quotation omitted). For example, in McCleary-Evans, the Fourth Circuit held that a plaintiff failed to state a claim when she alleged that "non-Black decisionmakers hired non-Black applicants instead of the [Black] plaintiff" because they had "predetermined to select for both positions a White male or female candidate." Id. (quotation omitted). Although the allegation was "consistent with discrimination, it does not alone support a reasonable inference that the

9

decisionmakers were motivated by bias." Id. at 586 (emphasis in original). In McCleary-Evans, the plaintiff described at length her own qualifications for the job, but she "did not include any allegations regarding the qualifications or suitability of the persons hired." Id. at 583–84. The Fourth Circuit noted that the employer may have hired the non-Black candidates because they were "better qualified, or . . . perform[ed] better during their interviews, or were . . . better suited based on experience and personality for the positions." Id. at 586. Or, the employer might have acted discriminatorily. See id. Without plausible factual allegations of appropriate hiring comparators (i.e. qualifications, interview performance, suitability for the job), the court could only speculate as to why the employer hired the non-Black individuals. Id. To satisfy the causal element of her Title VII claim, a plaintiff needs to plausibly allege that "the motive to discriminate was one of the employer's motives." Id.; see Nassar, 133 S. Ct. at 2523; Guessous, 2016 WL 3615780, at *6.

Ricketts fails to state a claim because she does not plausibly allege a connection between her race and her discharge. First, Ricketts alleges that a more junior, less educated white trainer was not discharged. See EEOC Questionnaire 2. However, Ricketts's bare allegation that she was discharged and a white employee was not discharged does not plausibly allege race discrimination. See McCleary-Evans, 780 F.3d at 585–86. Rather, Ricketts must provide more information about the comparator's performance. See id.

Next, Ricketts alleges that she "was better qualified as a trainer" than at least one other unidentified person and that she "possessed an extensive educational background." Compl. 3; see EEOC Questionnaire 2. Ricketts's recitation of her qualifications, however, does not alone plausibly support an inference that her employer discharged her due to her race. See McCleary-Evans, 780 F.3d at 582, 584. Notably, in McCleary-Evans, the plaintiff stated her own qualifications for the job, but the Fourth Circuit held that the plaintiff did not plausibly state a claim for relief because she did

10

not allege appropriate comparators between herself and the individuals hired. See id. at 582, 586. Specifically, she did not allege that she was equally or better qualified than the hirees after the employer considered interview performance. Id.

Similarly, Ricketts alleges that she possessed more extensive educational and work experience than the white coworker who was not terminated, but she fails to compare her job performance to her white coworker's performance. Cf. Compl. 3; EEOC Questionnaire 2. Without an appropriate performance comparator, the court can only speculate as to why Ricketts was terminated and her white coworker was not. Thus, Ricketts's allegations do not plausibly support an inference that race was a motivating factor in her termination. See McCleary-Evans, 780 F.3d at 584–86. Accordingly, Ricketts's race discrimination claim fails to state a claim upon which relief can be granted.

C.

Finally, Ricketts alleges that her employer retaliated against her for complaining about the discriminatory work environment. Compl. 3–4. She alleges that she "vigorously complained about how the proprietary software had many issues as well as the discriminatory comments . . . [regarding] people of color." Id. 3. As a result, her employer gave her additional work, such as training another coworker in utilities, and eventually terminated Ricketts's employment. Id. 4.

To prove a prima facie case of retaliation in violation of Title VII, Ricketts must show that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and (3) her employer took the materially adverse employment action because of Ricketts's protected activity. See, e.g., Foster, 787 F.3d at 250; Boyer–Liberto, 786 F.3d at 271; Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). An adverse

11

employment action includes "a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (quotation omitted) (alteration in original); see James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377–78 (4th Cir. 2004). A plaintiff establishes this element if the complained-of action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at 68 (quotations omitted). "[P]etty slights, minor annoyances, and simple lack of good manners" cannot sustain a retaliation claim. Id. Title VII is not a civility code, and such trivial harms are not materially adverse. See id. Moreover, a plaintiff claiming retaliation must show a causal connection between the retaliation and the protected activity. Nassar, 133 S. Ct. at 2531–33; Guessous, 2016 WL 3615780, at *6; Holland, 487 F.3d at 218.

Complaining about the effectiveness of propriety software is not protected activity under Title VII. See, e.g., Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 276–80 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012). Moreover, being asked to train a new coworker in utilities is not an adverse employment action under Title VII. See e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; James, 368 F.3d at 377–78. Furthermore, assuming that Ricketts's complaints about perceived discriminatory comments constitutes protected activity, her retaliation claim fails. Although termination constitutes an adverse employment action, Ricketts has not plausibly alleged that, but for her protected complaints about discriminatory comments, she would have retained her position. See e.g., Nassar, 133 S. Ct. at 2531–33; Holland, 487 F.3d at 218. Thus, Ricketts has failed to state a claim upon which relief can be granted.

IV.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 19] and DISMISSES plaintiff's complaint without prejudice. Plaintiff may file an amended complaint by August 15, 2016. If plaintiff fails to file an amended complaint by that date, the clerk shall close the case.

SO ORDERED. This **27** day of July 2016.

JAMES C. DEVER III
Chief United States District Judge