IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-293-D

LACHANTAL W. RICKETTS, )
 )
           Plaintiff, )
 )
v. ) **ORDER**
 )
LOGICS, LLC, d/b/a LOGIC SOLUTIONS, )
 )
           Defendant. )

On February 24, 2017, defendant Logics, LLC, d/b/a Logics Solutions ("Logics") moved for summary judgment [D.E. 55] and filed a memorandum in support [D.E. 56], along with a statement of material facts [D.E. 57]. On April 17, 2017, Lachantal Ricketts ("Ricketts" or "plaintiff") responded in opposition [D.E. 62]. On April 27, 2017, Logics replied [D.E. 63]. As explained below, no rational jury could find that Logics violated Title VII of the Civil Rights Act of 1964 or discharged Ricketts in violation of North Carolina public policy. Thus, the court grants Logics's motion for summary judgment.

I.

Logics employed Ricketts as a software trainer from April 2014 until terminating her employment on June 17, 2014. Ricketts Dep. [D.E. 57-3] 28. Ricketts's job duties included learning Logics's proprietary software and training Logics's customers to use the software. See id. at 25–27.

Ricketts contends that her work environment was racially hostile. In support, Ricketts notes that a diverse group of people regularly gathered outside Logics's building everyday. The people were visible from Logics's offices through windows. The outside group regularly included African-

Americans, Caucasians, and Latinos. Id. at 48. On April 30, 2014, Ricketts was inside her office and overheard some coworkers who were outside her office refer to the people gathered outside the office as "lowlifes" and "crackheads." Id. at 47. Ricketts (an African-American woman) was offended because she believed that her coworkers were using the terms "lowlifes" and "crackheads" to describe only the African-Americans in the outside group. Id.

Later that day, Ricketts told her supervisor Adrian Thomas (an African-American man) about her coworkers' comments. Id. at 51–52. Thomas told her to ignore the comments, which were "no big deal." Id.

On May 6, 2014, Ricketts again was in her office and again overhead some coworkers who were outside her office describe a group of people gathered outside the building as "lowlifes" and "crackheads." One coworker stated that "where he was from, they would have . . . have them do like office cleaning, janitorial work, and things of that nature." Id. at 52–53. On that date, Ricketts looked out the window of her office and observed that the outside group did not include any Caucasians. Id. at 53. Ricketts again complained to Thomas about the comments, and Thomas again told her to ignore the comments. Id. at 54.

On May 7, 2014, Ricketts overheard a coworker refer to a group of people from the neighboring building as "thugs." Id. at 56–57. Ricketts stated that the group of people from the neighboring building were "minorities, mostly African-Americans." Id. Ricketts found the term "thugs" racially offensive, but admits that the comment did not interfere with her ability to perform her job. Id. at 55. Ricketts did not complain to Thomas or anyone else at Logics about her coworker using the term "thugs." See id.

Later in May 2014, Ricketts asked two Caucasian coworkers for advice about what clothes

2

to wear to a client meeting. Id. at 55. One coworker jokingly responded, "whatever you do, just don't . . . wear any Daisy Dukes." Id. at 56. "Daisy Dukes" is a reference to short, cut-off denim short pants that a Caucasian character on the television show Dukes of Hazzard used to wear. Nonetheless, Ricketts connected the comment to other coworkers' comments she had overheard about "lowlifes," "crackheads," and "thugs" and believed that her coworker was stereotyping her due to her race. Id. Ricketts did not complain to Thomas or anyone else at Logics about the "Daisy Dukes" comment. Id. at 57.

Ricketts also cites her interaction with Caucasian coworker Elizabeth Fetherolf. According to Ricketts, Fetherolf repeatedly demanded that Ricketts submit an accounting of her time, but Ricketts claims that Thomas told Ricketts she did not need to account for her time. Id. at 80. Moreover, on one occasion, Fetherolf entered Ricketts's office and asked Ricketts to pray with her. Id. at 59. Ricketts prayed with Fetherolf for a few moments and then Fetherolf left and went back to work. Id. at 59–60. Initially, praying with Fetherolf did not offend Ricketts due to her own self-described spiritual background and because she and Fetherolf frequently discussed spirituality and religion at lunch. Nonetheless, after Fetherolf left the office, Fetherolf's prayer request offended Ricketts because Fetherolf is Caucasian. See id. at 79. Ricketts did not complain to Thomas or anyone else at Logics about Fetherolf. See Thomas Aff. [D.E. 57-1] ¶ 8.

On June 17, 2014, Thomas met with Ricketts and terminated Ricketts's employment. Ricketts claims that Thomas told her that Logics was terminating her employment because "accounts were low." Ricketts Dep. 36. Thomas testified that he never told Ricketts that Logics was terminating her employment due to a decrease in accounts. See Thomas Aff. ¶ 11. Rather, Logics terminated Ricketts's employment due to her poor performance, including failing to grasp key

3

technical aspects of her job and having "difficult communications with clients." Id. After Logics terminated Ricketts's employment, Logics had another African-American employee perform Ricketts's job duties. See id. ¶ 12.

On October 13, 2015, Ricketts sued Logics for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. See [D.E. 6]. The race-discrimination claim included both a claim concerning Ricketts's termination and a hostile work environment claim. Id. On July 27, 2016, the court granted Logics's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, but permitted Ricketts to file an amended complaint. See [D.E. 34]. On September 8, 2016, Ricketts filed an amended complaint again alleging race discrimination and retaliation in violation of Title VII and also alleging wrongful termination in violation of North Carolina public policy embodied in N.C. Gen. Stat. § 143-422.1. See Am. Compl. [D.E. 40] ¶¶ 53–69.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate an absence of a genuine issue of material fact or the absence of evidence to support the nonmoving

party's case. Celotex Corp., 477 U.S. at 325. Once the movant meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments or a "scintilla of evidence" will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). "[T]here must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. In evaluating material submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay). See Fed. R. Civ. P. 56(c)(4); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

A.

Title VII prohibits an employer from terminating an employee "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013).

Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the

5

part of the decisionmaker involved in the adverse employment action. See id. at 286–91. Such direct evidence would include a decisionmaker's statement that he terminated the plaintiff due to her race. See id. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000); see Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

Even without direct evidence of race discrimination, a plaintiff's Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in McDonnell Douglas. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

In count one, Ricketts contends that Logics terminated her employment due to her race. Ricketts lacks direct evidence to support this claim; therefore, she relies on the burden-shifting framework in McDonnell Douglas. Under McDonnell Douglas, Ricketts first must establish a prima facie case of race discrimination by showing that (1) she is a member of a protected class; (2) she

6

was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of her discharge; and (4) the discharge arose under circumstances permitting a reasonable inference of race discrimination. See, e.g., Hill, 354 F.3d at 285; Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). If Ricketts succeeds in proving her prima facie case, the burden shifts to Logics to articulate a legitimate, nondiscriminatory reason for Ricketts's discharge. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506–09; Burdine, 450 U.S. at 254. If Logics carries this burden of production by articulating a legitimate, nondiscriminatory reason for Ricketts's discharge, Ricketts must prove that the reason offered by Logics was a mere pretext for race discrimination. See, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 253–56; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006); Hill, 354 F.3d at 298; King, 328 F.3d at 150–54; Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

A plaintiff can prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147. In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on the basis of race. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of [race]." Laber v. Harvey, 438 F.3d 404, 430–31 (4th Cir. 2006) (en banc). In certain cases,

7

however, the factfinder may infer illegal discrimination from the articulated reason's falsity. See id. at 431; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148. Moreover, a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Iskander v. Dep't of the Navy, 116 F. Supp. 3d 669, 678 (E.D.N.C. 2015), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Terminating an employee for poor performance is not race-related, and an employer lawfully can rely on poor performance in taking adverse employment action. See Mereish, 359 F.3d at 335; Hawkins, 203 F.3d at 280; Fisher v. Asheville-Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469–70 (W.D.N.C. 1993).

Logics argues that Ricketts failed to establish a prima facie case because Ricketts was not fulfilling Logics's legitimate expectations when Logics discharged her. In support, Logics cites evidence detailing Ricketts's poor performance. See [D.E. 57] ¶ 8; Thomas Aff. ¶¶ 10–11; Sanders Aff. [D.E. 57-2] ¶¶ 4–5. Ricketts responds that her own testimony shows she was qualified and performing her job duties satisfactorily. See Ricketts Dep. 96–97, 106–07, 116; [D.E. 62-1]. Ricketts also cites two affidavits from former colleagues who worked with her in 2012 [D.E. 62-2] and 1998 [D.E. 62-3] who were impressed with her skills as a trainer.

In considering whether an employee was meeting her employer's legitimate expectations, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff."

8

Hawkins, 203 F.3d at 280 (alteration and quotation omitted); see King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Thus, an employee's own testimony about her job performance does not create a genuine issue of material fact as to whether she was meeting her employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067; Smith v. Martin, No. 5:10-CV-248-D, 2011 WL 3703255, at *5 (E.D.N.C. Aug. 23, 2011) (unpublished); O'Daniel v. United Hospice, No. 4:09-CV-72-D, 2010 WL 3835024, at *4 (E.D.N.C. Sept. 29, 2010) (unpublished); Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *9 (E.D.N.C. Mar. 31, 2009) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 611. Likewise, the testimony of former colleagues who worked with Ricketts in 1998 and 2012 does not create a genuine issue of material fact. See King, 328 F.3d at 149. Even viewing the evidence in the light most favorable to Ricketts, Ricketts has failed to establish a prima facie case of race discrimination. Thus, the court grants summary judgment to Logics on her claim that Logics terminated her employment due to her race.

Alternatively, even if Ricketts established a prima facie case of race discrimination, her race-discrimination claim fails. Logics has articulated a legitimate, nondiscriminatory reason for discharging Ricketts: poor performance. Moreover, Ricketts has not offered evidence from which a rational factfinder could find that Logics's proferred reason was a pretext designed to mask race discrimination. See Warch, 435 F.3d at 514–16; Miles v. Dell, Inc., 429 F.3d 480, 488–89 & n.5 (4th Cir. 2005); Hill, 354 F.3d at 285. Notably, Ricketts presents no admissible evidence suggesting that Logics's stated reason for discharging her was a pretext to mask race discrimination. Furthermore, Logics consistently has given the same reason to explain Ricketts's discharge: poor

performance.

In opposition, Ricketts again cites her own opinion about her performance. Although Ricketts subjectively believes that she was performing well, an employee's perception of her own performance cannot establish a genuine issue of material fact as to whether the employee was meeting her employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067. Although Ricketts contests the factual accuracy of the critiques of her performance, the issue is whether Thomas, the decisionmaker, believed the critiques to be true, which he did. See Holland, 487 F.3d at 215–17; Hill, 354 F.3d at 293–94; Hawkins, 203 F.3d at 280.

This court does not sit as a super-personnel board and ask whether Logics (through Thomas) should have excused Ricketts's poor performance or given her more time to improve. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005); DeJarnette v. Corning Inc., 133 F.3d 293, 299–300 (4th Cir. 1998). Additionally, the same-actor inference further undermines Ricketts's claim that Logics fired Ricketts due to her race. See Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse employment action taken by the employer."); see also Taylor v. Va. Union Univ., 193 F.3d 219, 231 (4th Cir. 1999) (en banc), abrogated in part on other grounds by Desert Palace Inc., v. Costa, 539 U.S. 90 (2003); Evans, 80 F.3d at 959; Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 214–15 (4th Cir. 1994). Here, Logics hired Ricketts in April 2014 and fired her on June 17, 2014. When Logics hired Ricketts, Logics knew she was African-American. Furthermore, during her tenure at Logics, her supervisor was

African-American, and after Ricketts was fired Thomas assigned Ricketts's work to another African-American employee. Even viewing the evidence in the light most favorable to Ricketts, no rational jury could find that Thomas was being dishonest when he explained that Logics terminated Ricketts's employment for poor performance. Accordingly, Ricketts's race-discrimination claim concerning her termination fails, and the court grants summary judgment to Logics on Ricketts's race-discrimination claim.

B.

As for Ricketts's retaliation claim, Ricketts has no direct evidence of retaliation and relies on the McDonnell Douglas framework. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252–55; Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004), abrogation on other grounds recognized by Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs, 242 F.3d at 190; see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2524–33 (2013); Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir.

2015). An adverse employment action includes "a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (alteration and quotation omitted). A plaintiff establishes this element if the complained-of action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (quotation omitted).

The court assumes without deciding that Ricketts established a prime facie case of retaliation. Logics, in turn, has articulated a legitimate, non-retaliatory rationale for terminating Ricketts's employment: poor performance. Thus, Ricketts must raise a genuine issue of material fact concerning pretext. See, e.g., Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 210–13 (4th Cir. 2014); Laing v. Fed. Express Corp., 703 F.3d 713, 721–23 (4th Cir. 2013).

Ricketts has failed to raise a genuine issue of material fact concerning pretext. Ricketts's performance problems were serious and no rational jury could find that Logics terminated her employment because of her complaints to Thomas on May 6 and 7, 2014. See, e.g., Laing, 703 F.3d at 721–23; Hawkins, 203 F.3d at 279–81. Moreover, Ricketts's subjective belief that Logics (through Thomas) fired her due to her two complaints about coworkers' comments does not create a genuine issue of material fact concerning pretext. See, e.g., Laing, 703 F.3d at 721–23; Holland, 487 F.3d at 217–18; Shepherd v. Coastal Cmty. Action, Inc., 602 F. Supp. 2d 686, 693–94 (E.D.N.C. 2009). Accordingly, the court grants Logics's motion for summary judgment on Ricketts's retaliation claim under Title VII.

C.

As for Ricketts's hostile work environment claim, Ricketts must prove that: (1) she experienced unwelcome harassment; (2) the harassment was because of her race; (3) the harassment

12

was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) the harassment is imputable to the employer. See, e.g., EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc). Ricketts must show that race was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007). "[C]onclusory statements that [an employer] treated [the plaintiff] less favorably than" other employees of "similar rank" who lacked the relevant protected characteristic "cannot support an actionable claim for harassment." Causey v. Balog, 162 F.3d 795, 801–02 (4th Cir. 1998).

To determine whether alleged harassment was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and to create an abusive working environment, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the harassment to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers the "frequency of the discriminatory conduct; its severity; whether it

13

is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The conduct must be extreme to be actionable. See id.; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80. The "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. "[D]iscriminatory intimidation, ridicule, and insult" based on the protected characteristic must "permeate[ ]" the work environment in a manner "sufficiently severe or pervasive to alter the conditions" of the plaintiff's employment and to "create an abusive working environment." Harris, 510 U.S. at 21 (quotations omitted). Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See White, 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker, 775 F.3d at 207–10; Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli v. City of Balt., 648 F.3d 216, 220–22 (4th Cir. 2011).

Even construing the record in the light most favorable to Ricketts, Logics is entitled to summary judgment on Ricketts's hostile work environment claim. Although this court does not condone the alleged comments of Ricketts's coworkers, Title VII does not provide a remedy for every stupid joke or every rude, insensitive, or offensive comment uttered in a workplace. At summary judgment, the court accepts as true that Ricketts, on three occasions, overheard coworkers

14

standing outside her office looking out a window refer to a group of "people of color, mostly African-Americans" who assembled outside Logics's building as crackheads, thugs, or criminals. Nonetheless, under Title VII, those comments are not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive workplace. See, e.g., White, 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 328–30 (4th Cir. 2010). The same conclusion holds true even adding the "Daisey Dukes" comment and Ricketts's conversations with Fetherolf. See, e.g., Mosby-Grant, 630 F.3d at 328–32. In totality, the alleged rude and insensitive comments are not enough under Title VII to sustain Ricketts's hostile work environment claim. See, e.g., Mosby-Grant, 630 F.3d at 328–30; Baqir, 434 F.3d at 746–47; see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker, 775 F.3d at 207–10; Freeman, 750 F.3d at 420–24; Okoli, 648 F.3d at 218–22; EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175–77 (4th Cir. 2009); EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–19 (4th Cir. 2008); White v. BFI Waste Servs., L.L.C., 375 F.3d 288, 297–98 (4th Cir. 2004). Thus, the court grants Logics's motion for summary judgment on Ricketts's hostile work environment claim.

D.

In count two, Ricketts alleges that Logics wrongfully discharged her in violation of North Carolina public policy. North Carolina law governs Ricketts's wrongful-discharge claim. Thus, the court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing

15

opinions from the Supreme Court of North Carolina, the court "may consider lower court opinions[,] ... treatises, and the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In doing so, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the Supreme Court of North Carolina would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 397–98 (quotation omitted).

Under North Carolina law, an employer generally may terminate an at-will employee for any reason. Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 568–72, 515 S.E.2d 438, 439–41 (1999). North Carolina recognizes a narrow exception to that general rule if an employee's termination violates North Carolina public policy. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting)); Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos v. Oakdale Knitting Co., 331 N.C. 348, 350–54, 416 S.E.2d 166, 167–70 (1992); Coman v. Thomas Mfg. Co., 325 N.C. 172, 176–78, 381 S.E.2d 445, 447–49 (1989). To prove a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identify and rely upon a specific North Carolina statute or North Carolina constitutional provision stating North Carolina's public policy. See Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos, 331 N.C. at 350–54, 416 S.E.2d at 167–70; Coman, 325 N.C. at 176, 381

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

16

S.E.2d at 447; Horne v. Cumberland Cty. Hosp. Sys., Inc., 228 N.C. App. 142, 146, 746 S.E.2d 13, 17–19 (2013); Gillis v. Montgomery Cty. Sheriff's Dep't, 191 N.C. App. 377, 379–81, 663 S.E.2d 447, 449–50 (2008); Whitings v. Wolfson Casing Corp., 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005); Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001), aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001) (per curiam).

Ricketts relies on N.C. Gen. Stat. § 143-422.2 as the source of North Carolina's public policy.[2] Specifically, Ricketts contends that Logics terminated her employment in retaliation for her complaints about her coworkers' racially insensitive comments. Alternatively, Ricketts contends that Logics terminated her employment due to her race.

Section 143-422.2 does not create a private right of action for retaliation or provide a source of public policy concerning retaliation. See, e.g., Whitt, 359 N.C. at 625, 614 S.E.2d at 532; McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003); Swann v. Source One Staffing Sols., 778 F. Supp. 2d 611, 622–23 (E.D.N.C. 2011); Haley v. Wal-Mart Stores E., L.P., No. 5:07-CV-219-D, 2008 WL 5069073, at *4 (E.D.N.C. Nov. 17, 2008) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544 (E.D.N.C. 2008); Efird v. Riley, 342 F. Supp. 2d 413, 428 (M.D.N.C. 2004); Stout v. Kimberly Clark Corp., 201 F. Supp. 2d 593, 607 (M.D.N.C. 2002);

---

[2] N.C. Gen. Stat. § 143-422.2 states:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

17

Bradley v. CMI Indus., Inc., 17 F. Supp. 2d 491, 499 (W.D.N.C. 1998). Accordingly, the court grants summary judgment to Logics on Ricketts's retaliation claim under North Carolina law.

As for Ricketts's race-discrimination claim under North Carolina law, that claim fails for the same reason that her Title VII race-discrimination claim fails. See Haley, 2008 WL 5069073, at *4; McDougal-Wilson, 427 F. Supp. 2d at 621; Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 783 (M.D.N.C. 2004), aff'd, 117 F. App'x 291 (4th Cir. 2004) (per curiam) (unpublished). Thus, the court grants summary judgment to Logics on count two.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 55]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 27 day of September 2017.

JAMES C. DEVER III
Chief United States District Judge